IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| WILLIAM O'KANE, SYNERGY SOURCE, LLC, and AZKARTA CREST CORPORATION, § § § § | |
| Plaintiffs, § § | |
| VS. § | CIVIL ACTION NO. H-18-2728 |
| § VERLEY SEMBRITZKY, JR., a/k/a ROCKY § SEMBRITZKY, *et al.*, § § § | |
| Defendants. § | |

**MEMORANDUM AND ORDER**

William O'Kane, Synergy Source, LLC, and Azkarta Crest Corporation have sued Verley Sembritzky, aka "Rocky Sembritzky," Goldie Rose, and others over an allegedly fraudulent investment scheme. During this litigation, the court ordered Goldie Rose to pay real-estate taxes owed on a luxury condominium titled in Rose's name. (Docket Entry No. 111 at 13). The plaintiffs moved for sanctions against Rose, claiming that she violated the order by not paying the real-estate taxes. (Docket Entry No. 127). Rose responded, the plaintiffs replied, and both filed a surreply and surresponse. (Docket Entry Nos. 131, 132, 134, 140). After carefully considering the parties' arguments, the record, and the applicable law, the court grants the plaintiffs' motion for sanctions, for reasons explained in detail below.

**I.     Factual Background**

This case arises out of the plaintiffs' large investment in Rasli Bahari Kenya Limited. The facts are set out in the June 19, 2019, Memorandum and Order, (Docket Entry No. 111), and are set out here only as background.

In late 2015, O'Kane, Synergy, and Azkarta invested a total of $1,404,000 in Rasli Bahari Kenya Limited. (Docket Entry No. 38 at ¶¶ 20–22, 34–35, 43, 51). "Rocky" Sembritzky gave the plaintiffs Regulation D, Rule 506 Private Placement Letters, and told the plaintiffs that the investment would be used to design, build, and operate Kenyan desalination plants that would earn hundreds of millions of dollars starting in 2019. (*Id.* at ¶¶ 20–24). Sembritzky transferred the plaintiffs' money to Compass Bank accounts that he or his then-wife, Goldie Rose, owned. (Docket Entry No. 102-1 at ¶¶ 10–12; Docket Entry No. 102-2 at ¶¶ 10–12; *see* Docket Entry No. 110-2 at 297). Sembritzky eventually transferred the money to a title company. (Docket Entry No. 105-1 at 2). The plaintiffs allege that the money never made it to a Kenyan desalination plant project. (*Id.*).

The plaintiffs allege that Sembritzky and Rose bought a luxury condominium, the "Kirby Condominium," with some of the money, and that Rasli Nahari Kenya Limited never attempted to build or operate a desalination plant. (Docket Entry No. 5-1 at ¶¶ 12–16; Docket Entry No. 102-1 at ¶ 12; Docket Entry No. 102-2 at ¶ 12; Docket Entry No. 105-1 at 2; Docket Entry No. 110-2 at 111). The Kirby Condominium was deeded to Rose in December 2015. (Docket Entry No. 5-1 at ¶ 14). On March 6, 2019, Rose and Sembritzky divorced, leaving Sembritzky with no rights, title, or interest in the Kirby Condominium. (Docket Entry No. 107 at 1, 9–10; Docket Entry No. 107-4 at 4).

In September 2018, the court issued a preliminary injunction prohibiting Sembritzky and Rose "from selling, assigning, transferring, encumbering, or otherwise disposing of any interest in the Kirby Condominium and from receiving or acquiring any interest in the Kirby Condominium, without order from a court of competent jurisdiction." (Docket Entry No. 11 at 3). The plaintiffs later moved for another order, seeking to compel Rose to pay the ad valorem property taxes

assessed against the Kirby Condominium. (Docket Entry No. 105). The court granted the motion, finding that "[t]he plaintiffs seek a constructive trust as an equitable remedy for the alleged fraudulent transfer, which the court could not provide if the Kirby Condominium were lost in a tax sale," and ordered payment of the taxes. (Docket Entry No. 111 at 11–12). Rose did not pay. (Docket Entry No. 127-1 at 2). The plaintiffs moved for civil contempt sanctions against Rose for violating the court's order. (Docket Entry No. 127).

## II. Discussion

"Civil contempt can serve two purposes, either coercing compliance with an order or compensat[ing] a party who has suffered unnecessary injuries or costs because of contemptuous conduct." *In re Bradley*, 588 F.3d 254, 263 (5th Cir. 2009) (citations omitted) (alteration in original). Civil contempt requires "(1) that a court order was *in effect*, and (2) that the order required certain conduct by the respondent, and (3) that the respondent failed to comply with the court's order." *Bradley*, 588 F.3d at 264.

The parties do not dispute that the plaintiffs seek civil contempt sanctions to coerce Rose to comply with the court's order, not to compensate the plaintiffs. (Docket Entry No. 132 at 2; Docket Entry No. 134 at 1). Nor do the parties dispute that this court's order, requiring Rose to pay the ad valorem taxes, is currently in effect, and that Rose has not paid the taxes. (Docket Entry No. 127 at 3–4; Docket Entry No. 131 at 3). Instead, Rose argues that she has no ability to pay the ad valorem taxes and is simply unable to comply with this court's order. (Docket Entry No. 131 at 3).

An alleged contemnor may assert "a *present* inability to comply with the order in question" as a defense. *United States v. Rylander*, 460 U.S. 752, 757 (1983). The alleged contemnor bears the burden to show that compliance with the court order is impossible. *Quilling v. Funding Res.*

*Grp.*, 227 F.3d 231, 235 (5th Cir. 2000) (citing *United States v. Sorrells*, 877 F.2d 346, 349–50 & n.4 (5th Cir. 1989)). The contemnor may meet this burden only by producing credible evidence. *Sorrells*, 877 F.2d at 349 n.4.

Rose has produced an affidavit, an application for tax deferral, a personal bank account statement, and deposition testimony. (Docket Entry Nos. 131-1, 134). But she has not met her burden to produce credible evidence showing a present inability to pay the taxes. Her unsworn affidavit is contradicted and undermined by evidence produced in discovery. Her application for tax deferral has no effect on her present ability to pay the taxes she currently owes. Her bank statements show regular, large deposits, further undermining her affidavit statements, and her deposition testimony reveals an incomplete picture of her finances.

The plaintiffs argue that Rose has substantial assets and point to evidence produced in discovery indicating that Rose's assets in 2015 were valued at about $3.8 million. (Docket Entry No. 127-1 at 3–4, 26–27, 39). Rose counters that "despite the assets listed by Plaintiffs—all of which are illiquid," she is unable to pay the ad valorem taxes. (Docket Entry No. 131 at 7–8). She attaches an unsworn affidavit in support, stating that:

- she applied for the Harris County Appraisal District Deferral Program, which would defer ad valorem taxes on the Kirby Condominium until her death or sale of the property;

- the Kirby Condominium is valued in excess of $2.6 million, which is more than the $1,404,000 the plaintiffs claim in this suit;

- the ad valorem taxes due on the Kirby Condominium are $151,276.36—less than six percent of the Condominium's value—and it does not impact the plaintiffs' claim because the Condominium has "sufficient equity in it to satisfy Plaintiffs' claims";

- although she has real and personal property, most of these assets are illiquid;

- she is unable to borrow against the Kirby Condominium, in part because of this court's injunction;

4

- her bank account currently contains $12,478.87, and those are the only liquid funds she has access to;

- she currently lives on social security and "whatever money" she receives from selling her jewelry, with no other sources of income;

- the exhibit that the plaintiffs attached to their motion for sanctions shows her financial condition before she purchased the Kirby Condominium and lists some of the funds used to purchase it;

- her 178 shares of Rasli Nahari Kenya Limited have no value if the court believes the company is a Ponzi scheme, as the plaintiffs allege, and there is no trading market for those shares;

- the Goldie Rose 2016 Irrevocable Trust contains no assets and she has not received revenue from the 40 percent of future distributions to Rocky Sembritzky from his business ventures, and;

- she leases her Mercedes and has no equity in the vehicle.

(Docket Entry No. 131-1 at 1–3).

An unsworn affidavit, by itself, does not satisfy the burden to produce credible evidence. In *United States v. Rylander*, the defendant in a civil contempt proceeding submitted an affidavit stating that he did not possess records the government sought, but he refused to submit to cross-examination while testifying. *United States v. Rylander*, 460 U.S. 752, 754–55 (1983). The Supreme Court held that "the District Court was entirely justified in concluding, as it did, that Rylander 'failed to introduce any evidence at the contempt trial.' This was a time for testimony, and Rylander's *ex parte* affidavit and uncross-examined testimony were properly disregarded by the District Court." *Id.* at 758.

Rose's unsworn affidavit is insufficient. Fifth Circuit law requires an affidavit made under 28 U.S.C. § 1746, as here, to be made under penalty of perjury and to be verified as "true and correct." *See Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988) (an unsworn

5

affidavit that was not verified as "true and correct" must be disregarded as summary judgment proof). Even if Rose did verify the affidavit as "true and correct," and swear to it under penalty of perjury, it would not credibly show that she cannot currently pay the ad valorem taxes. Other evidence—including Rose's bank statements, her deposition testimony, and interrogatory responses produced in discovery—undermines the credibility of her statements that she has no access to funds to pay the taxes.

Rose offers one bank statement from her personal bank account, among other evidence, to confirm her affidavit. (Docket Entry No. 131-1 at 13–15). She argues that the $12,478.87 ending cash balance in her bank account is her only liquid asset, and that it is far short of the $151,276.36 in ad valorem taxes. (Docket Entry No. 131 at 7).

The submitted bank statement tells a different story when viewed with previous statements. The submitted statement shows activity between June 21, 2019, and July 22, 2019. (Docket Entry No. 131-1 at 13–15). While the ending balance is $12,478.87, the statement also shows a $30,000 teller deposit on July 8, 2019. (Docket Entry No. 131-1 at 13). Rose's other bank statements, produced in discovery and submitted by the plaintiffs, show that between December 27, 2018, and July 22, 2019, a total of $91,335.74 was deposited into the account. (Docket Entry No. 132-1). Only $7,070 of that amount came from social security. (*Id.*).

Rose argues—without admitting as true—that even if the court estimates a yearly income of over $156,000 from these numbers, as the plaintiffs suggest, that amount would leave her with only $4,723.64 after paying the taxes. (Docket Entry No. 132 at 5; Docket Entry No. 134 at 3). Rose's argument impermissibly tries to shift the burden. It is not the plaintiffs' burden to prove that Rose can pay the taxes; it is Rose's burden to produce credible evidence showing her current inability to do so. These deposits undermine the value of Rose's single bank statement as evidence

6

she cannot pay, and they cast doubt on her assertion that she lives on social security and "whatever money" she can get from selling her jewelry, with "no other source of income." (Docket Entry No. 131-1 at 2). At a minimum, the deposits show that Rose receives significant income.

Rose also offers excerpts of a deposition transcript containing her testimony about the sale of her furniture, furs, and jewelry. (Docket Entry No. 134 at 8–44). Rose offers this to rebut the plaintiffs' argument that she has assets, including a collection of fur coats allegedly worth over $50,000, jewelry worth over $300,000, furniture worth $250,000, and an art collection worth over half of a million dollars, that she could sell to pay the ad valorem taxes. (Docket Entry No. 127 at 4–5). Rose testified in her deposition about personal jewelry that she sold between 2008 and 2013, two years before purchasing the Kirby Condominium. (Docket Entry No. 134 at 15–42). Rose's testimony confirms that she sold a significant amount of jewelry between 2008 and 2013. But her testimony fails to show how much jewelry she still owns. Neither the excerpt that she provided, or the full transcript attached to the plaintiffs' surresponse, includes Rose's testimony about whether she currently owns any jewelry, furs, furniture, or artwork, or how much. (*See* Docket Entry No. 123 at 8–42; Docket Entry No. 140 at 10–90).

Rose's own interrogatory response further undermines the value of the deposition testimony she submitted. During discovery, plaintiff O'Kane served an interrogatory on Rose that asked her to:

> Identify and describe any assets you owned during the Relevant Time Period, including within your answer for each such asset, a description of the asset, the date you acquired an interest in the asset, the nature of your interest in the asset, the fair valuation of the asset during the Relevant Time Period, any transfer or other disposition of the asset you made during the Relevant Time Period, and a description of any documents relating to the asset.

7

(Docket Entry No. 127-1 at 16). The interrogatories defined the "Relevant Time Period" as "January 1, 2015 through the present." (Docket Entry No. 127-1 at 11).

Rose responded to the interrogatory with a balance sheet showing $57,000 in debt and $3,800,006 in assets, including $1,065,000 in cash, $332,656 in jewelry, $519,000 in furniture and $57,500 in furs. (Docket Entry No. 127-1 at 3–4, 26–27, 39). Rose labeled this balance sheet: "Goldie Rose assets and liabilities before condo purchase-separate property." (Docket Entry No. 127-1 at 39). The label makes clear that Rose responded to the interrogatory without considering the "Relevant Time Period," because the Kirby Condominium was deeded in her name in December 2015. (Docket Entry No. 5-1 at ¶ 14).

The court agrees that the asset values listed on the balance sheet may not accurately reflect her current net worth. (Docket Entry No. 131-1 at 2). But Rose has also stated in her affidavit that she lives off of "whatever money" she receives from selling her jewelry, indicating that she still owns at least some of the jewelry listed on the balance sheet. (*Id.*). And while Rose testified in her deposition about selling various pieces of jewelry between 2008 and 2013, she does not testify about selling any furniture or artwork. (Docket Entry No. 134 at 8–44). Nor does her testimony reflect the sale of jewelry after purchasing the Kirby Condominium. (*Id.*).

In her response to O'Kane's interrogatory, Rose also attached an exhibit listing property that she had liquidated between 2008 and 2013 to help support Rocky Sembritzky's business ventures. (Docket Entry No. 127-1 at 36–38). The exhibit lists pieces of jewelry, various life insurance policies, stocks and other securities, savings accounts, and a 2003 Hummer H2 vehicle, but again, it does not list any furniture, furs, or artwork. (*Id.*). These sales all took place before the date of Rose's balance sheet, which indicates just over $3.8 million in assets—including furs, furniture, and artwork. (Docket Entry No. 127-1 at 36–39). While Rose may have spent some of

8

the proceeds from these assets to pay for the Kirby Condominium, she has presented no evidence to show that she has exhausted her assets.

Rose argues that she is required to pay about $4,000 each month for Condominium maintenance, which further diminishes her available income and shows that she is unable to pay the taxes. (Docket Entry No. 134 at 3). Monthly checks of about $4,000, payable to "2727 Kirby," confirm this cost. (Docket Entry No. 132-1 at 23). This expense might impair her ability to pay the taxes, but it does not cast light on whether Rose has assets she could use.

The court agrees with Rose that evidence of 140 shares of Rasli Nahari Kenya Limited stock, which the plaintiffs argue have significant value, does not further undermine Rose's argument that she is presently unable to pay the ad valorem taxes. Rose argues that those shares have not yet been transferred into her name. (Docket Entry No. 134 at 4). Even if Rose did own those shares, and without determining those shares' value, if they have any value at all, the record shows no trading market. The shares were sold as part of a private placement under Regulation D, (Docket Entry No. 38 at ¶ 20), and cannot be easily liquidated. These shares do not impact the court's analysis.

Rose also points to evidence showing that she could not sell her Mercedes Benz to pay part of the taxes. She states in her affidavit that she leases the vehicle and points to payments listed in her bank statements to show that she did not prepay the lease. (Docket Entry No. 134 at 4; Docket Entry No. 132-2 at 2–23). The evidence shows that Rose has no equity in the vehicle and could not sell it to pay the taxes. But this does not show that she cannot pay the taxes. Rather, it shows that she has an income level that supports leasing such an expensive car, and that she could lease a different vehicle at a much lower cost.

Rose's signed application for the Harris County Appraisal District Deferral Program—which defers ad valorem taxes on property that is the primary homestead for homeowners over 65 years old, until death or sale of the property—also does not show that Rose cannot currently pay the ad valorem taxes.[1] The application, if eventually approved, may affect the balance of ad valorem taxes Rose owes. If so, Rose may then move to modify the injunction. But the application does not bear on Rose's present ability to pay the taxes she currently owes.

Rose argues that "[c]ontrary to the mandatory injunction to pay the ad valorem taxes, Plaintiffs have not suffered irreparable injury or harm by Rose's non-payment of the ad valorem taxes on the Kirby Condominium." (Docket Entry No. 134 at 2). Rose argues that the Kirby Condominium's value of at least $2.6 million is more than enough to satisfy the plaintiffs' damages claims. (*Id.*). This argument misses the point. This court, in its Memorandum and Opinion granting the preliminary injunction against Rose, found that "the court could not provide [the constructive trust remedy] if the Kirby Condominium were lost in a tax sale. Because Rose's failure to pay real estate taxes on the Kirby Condominium puts that property at risk of being sold and lost to the plaintiffs, the plaintiffs have shown that there is a substantial threat of irreparable harm." (Docket Entry No. 111 at 11–12). Rose's argument that the Condominium is worth more than the plaintiffs' damages claims does not bear on Rose's current ability to pay the ad valorem taxes needed to keep the Condominium available to the plaintiffs.

---

[1] The plaintiffs argue that Rose cannot be eligible for the exemption because, under Texas law, when a home is purchased with stolen funds, the title owner holds the property in constructive trust for the defrauded parties. (Docket Entry No. 132 at 9 n.8). As a result, the plaintiffs argue, the Kirby Condominium cannot be Rose's homestead because she holds the property in constructive trust for the plaintiffs. (*Id.*). Because this evidence is not probative of Rose's ability to pay the taxes, the court need not reach this issue.

Rose states in her affidavit that because the balance sheet lists her assets before purchasing the Kirby Condominium, it would not include "some of the monies utilized to purchase the condominium." (Docket Entry No. 131-1 at 2). And Rose argues, without evidence or explanation, that "[c]ontrary to Plaintiffs' assertions, Plaintiffs are well aware of what has been sold to date and what remains." (Docket Entry No. 134 at 5). The record, however, does not inform the court or parties of what assets remain. Rose points to the balance sheet she produced, but that reflects her assets before December 2015. (Docket Entry No. 5-1 at ¶ 14; Docket Entry No. 127-1 at 39). She highlights her own deposition testimony showing that she liquidated some jewelry between 2008 and 2013, and she states in her affidavit that she lives on social security and the proceeds of selling her jewelry. (Docket Entry No. 131-1 at 2; Docket Entry No. 134 at 15–42). But Rose's bank account statements show regular, significant deposits unrelated to social security income, and more than her descriptions of the jewelry sales support. (Docket Entry No. 132-1). Even if these deposits reflect past jewelry sales, Rose has not identified competent evidence of her current financial situation. The existence of valuable assets, confirmed by Rose's own interrogatory response, undermines the credibility of her bank statement as evidence that she cannot pay the taxes. Rose had ample opportunity to provide current information as evidence that she could not pay; she did not do so. Rose has the burden to show that she is presently unable to comply with this court's order, and she has failed to meet that burden.

A coercive civil sanction should use the "least possible power adequate" to achieve compliance with the court order. *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1802 (2019). The plaintiffs have asked the court to impose a sanction on Rose that requires her to pay them $2,000 per day until and unless she pays the taxes to comply with the court order. (Docket Entry No. 127 at 5). Rose has not presented an alternative or a different amount that would be the "least possible power

adequate" to ensure compliance, instead arguing that no amount can achieve compliance with this court's order. (Docket Entry No. 131 at 7). The court recognizes that many of Rose's assets are illiquid, and they may take time to sell. Imposing a sanction that requires significant daily payments may constrain Rose's ability to pay the taxes. Courts impose civil contempt sanctions to coerce a party into complying with a court order, not to coerce a quick settlement.

The court finds the amount of $500.00 per day adequate to ensure Rose's compliance. Rose must pay this amount to the plaintiffs each month, by the last Friday of each month, until the ad valorem taxes on the Kirby Condominium are paid. If and when Rose pays the full amount of taxes on the Condominium, any amount due in sanctions that have accrued for the current month that has not already been paid is cancelled.

## IV. Conclusion

The court orders Rose to pay civil contempt sanctions in the amount of $500.00 per day to the plaintiffs, collectively, until she pays the 2017 and 2018 ad valorem taxes due on the Kirby Condominium, as ordered by this court in its June 2019 Memorandum and Opinion. (Docket Entry No. 111 at 13). The sanctions payments are due each month by the last Friday of that month. If Rose pays the full amount of ad valorem taxes due on the Kirby Condominium, any sanctions payments that have accrued for that month are cancelled.

SIGNED on December 9, 2019, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge